# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| UNITED STATES OF AMERICA, | : | Case No. 3:18-cr-187 |
| --- | --- | --- |
| Plaintiff, | : | Judge Thomas M. Rose |
| v. | : | |
| BRIAN E. GROOMS, | : | |
| Defendant. | : | |

## ENTRY AND ORDER DENYING MOTION TO SUPPRESS (DOC. 21)

This case is before the Court on the Motion to Suppress (Doc. 21) filed by Defendant Brian E. Grooms ("Grooms"). On December 13, 2018, the Grand Jury returned a one-count indictment against Grooms. (Doc. 15.) Count 1 charges Grooms with a violation of 21 U.S.C. § 846 and alleges that Grooms and a co-defendant conspired with others to possess with an intent to distribute a mixture or substance containing a detectable amount of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B).[1] (*Id*.) Grooms entered a not guilty plea. (Doc. 19.)

On January 15, 2019, Grooms filed the Motion to Suppress. (Doc. 21.) He is challenging the admissibility of statements that he allegedly made to law enforcement officers in the alleged absence of a proper *Miranda* warning, and he seeks suppression of all evidence gained from him in violation of his constitutional rights under both the Ohio and United States Constitutions. (*Id*.) On April 3, 2019, the Court held a hearing on the Motion to Suppress. (Doc. 29.) On May 14, 2019, Grooms filed a Memorandum in Support of the Motion to Suppress. (Doc. 30.) Although

---

[1] The Superseding Indictment includes the same charge against Grooms; it added a co-defendant. (Doc. 35.)

the Government did not file a memorandum in response, the Court deems no response necessary based on its review of the record. This matter is therefore ripe for review.

For the reasons below, the Motion to Suppress is **DENIED**.

## I. <u>**FACTUAL FINDINGS**</u>

The following findings are made based on the evidence submitted by the parties and the testimony at the April 3, 2019 hearing on the Motion to Suppress.

On November 28, 2018, law enforcement obtained a search warrant for the premises located at 184 South Burgess Avenue in Columbus, Ohio. They executed the search warrant, and Grooms and his co-defendant Juwan Chino Dillard ("Dillard") were present at the scene when officers entered the residence on the premises. Grooms and Dillard were apprehended and split up. Special Agent Charles Vill of the Drug Enforcement Administration ("Special Agent Vill") then conducted separate interviews with each of them. Specifically, Special Agent Vill first interviewed Grooms, then he interviewed Dillard, and then he conducted a second interview of Grooms. All of those interviews took place at the scene on the evening of November 28, 2018.

At the time of the interviews, Mr. Grooms was handcuffed and in custody. Prior to the first interview of Grooms, Special Agent Vill read Grooms the DEA Advice of Rights, asked Grooms to read along with him, asked Grooms if he understood his rights (and Grooms responded that he did), and Grooms verbally acknowledged that he was willing to speak with Special Agent Vill. Special Agent Vill then requested that Grooms sign an Advice of Rights waiver (Government Exhibit 2), Grooms signed the waiver while in handcuffs, and Special Agent Vill and his partner both also signed the waiver. No questions were asked of Grooms prior to Grooms signing the waiver. There is no dispute that, during the first interview, "Mr. Grooms was Mirandized." (Doc. 30 at PAGEID #105.)

There came a point in the first interview of Grooms when Special Agent Vill felt that there was nothing further to be obtained, so Special Agent Vill stopped the interview. He then interviewed Dillard before returning to Grooms to interview Grooms a second time. Special Agent Vill did not present Grooms with another *Miranda* waiver (Advice of Rights waiver) for Grooms to sign. However, he did remind Grooms of the waiver that Grooms had signed prior to the first interview, informed Grooms that the waiver still applied, and asked Grooms if he had any questions about the waiver. Grooms did not indicate that he had any questions. Special Agent Vill also asked Grooms if he was still willing to talk to him, and Grooms nodded yes.

Special Agent Vill testified that everything placed in his report (Government Exhibit 3) came from the first interview of Grooms and that Grooms did not make any additional statements of "evidentiary value" during the second interview. (Doc. 29 at PAGEID # 94, 97.)

**II.     ANALYSIS**

The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "In *Miranda*, the Supreme Court established certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation." *Treesh v. Bagley*, 612 F.3d 424, 429 (6th Cir. 2010). A defendant may waive his or her rights provided that the waiver is made voluntarily, knowingly, and intelligently. *Miranda*, 384 U.S. at 444.

"The courts have generally rejected a *per se* rule as to when a suspect must be readvised of his rights after the passage of time or a change in questioners." *United States v. Weekley*, 130 F.3d 747, 751 (6th Cir. 1997) (concluding that officers did not need to readvise suspect of his *Miranda* rights where he was read his rights upon his arrest, reminded of his rights during transport, and

reminded again in an elevator before he was questioned). Instead, courts "apply a totality-of-the-circumstances test when considering whether a delay between reading the *Miranda* warnings and custodial interrogation requires the interrogating officers to readvise the suspect of his *Miranda* rights." *Treesh*, 612 F.3d at 431.

"[A]dditional warnings are only required if the circumstances seriously changed between the initial warnings and the interrogation." *Treesh*, 612 F.3d at 432. In *Treesh*, the Sixth Circuit held that the interrogating officer was not required to fully readvise the defendant of his *Miranda* rights where a different officer had provided the initial warnings, the defendant was then transferred to a different location, approximately two hours passed between the warnings and interrogation, and the interrogating officer partially readvised the defendant of his *Miranda* rights. *Id*. at 432.

Grooms argues that, at the time of the second interview, Special Agent Vill did not go over his rights with him and, therefore, the Court should "suppress from use at trial all evidence gained from him in violation of his constitutional rights under the United States and Ohio Constitutions." (Doc. 30 at PAGEID # 106-07.) He argues that "he was interviewed during an exceptionally stressful incident in which he was handcuffed and in police custody and control without the benefit of a *Miranda* warning during the second portion of the interrogation." (*Id*.) He further argues, without citation, that his statements during the second interview "were not knowingly, voluntarily or intelligently provided," and that those statements were "a product of psychological pressure during a second interrogation that was perhaps more psychologically stressful than even the first, as his Co-Defendant had made statements to the police." (*Id*. at PAGEID # 107.)

The Court finds that Grooms' constitutional rights were not violated. Again, it is undisputed that Grooms waived his rights prior to the first interview. Regarding the second

interview, looking at the totality of the circumstances, Special Agent Vill was not required to fully readvise Grooms of his *Miranda* rights. *Treesh*, 612 F.3d at 429-32; *Weekley*, 130 F.3d at 751. The second interview took place at the same location, the same evening, and with the same interviewing officer as the first interview. The evidence does not show that the circumstances "seriously changed between the initial warnings and the interrogation." *Treesh*, 612 F.3d at 432. As in *Treesh*, Special Agent Vill's statements to Grooms and actions prior to conducting the second interview sufficed to alert Grooms to the fact that he could still invoke his *Miranda* rights. *Id*.

### III. CONCLUSION

For the reasons above, the Court **DENIES** Grooms' Motion to Suppress (Doc. 21).

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, June 24, 2019.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE